## Levin, Appellant, *v.* Van Horn.

Argued November 15, 1962. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and KEIM, JJ.

*Sidney J. Smolinsky,* for appellants.

*Lester L. Dolfman,* with him *Murray B. Dolfman,* for appellees.

*Nathan Lavine,* with him *Marvin Krasny,* and *Adelman & Lavine,* for appellee.

OPINION BY MR. JUSTICE O'BRIEN, October 10, 1963:

The plaintiffs, Joseph M. Levin and his wife, Sadie Levin, commenced separate actions in trespass against Abraham J. Rosenfeld, a medical doctor, and J. Orville Van Horn and Jane W. Van Horn, individually and trading as Anglecott Sanatorium. Doctor Rosenfeld was charged with malpractice in causing infection of Mrs. Levin's liver and in failing to properly diagnose and treat her. The Van Horns were accused of negligence in not providing Mrs. Levin with proper care and neglecting to report to Doctor Rosenfeld as well as administering drugs to her not authorized by the doctor and otherwise acting contrary to the doctor's orders.

The cases were consolidated and the trial resulted in jury verdicts for defendants. These appeals were taken from judgments entered on the verdicts after the refusal of new trial.

Mrs. Levin had been a patient of Doctor Rosenfeld for about 16 years prior to January 18, 1957. She had suffered many serious illnesses including surgeries during this time. The events relevant to the instant matter, and for which appellants make claims, began on December 24, 1956, when Mrs. Levin called on Doctor Rosenfeld complaining that her knees were stiff and painful. After examination the Doctor administered injections of hydrocortisone into each knee joint cavity and she was given other medication to be taken orally. Subsequently, her condition worsened to the extent that she was unable to walk or stand.

Doctor Rosenfeld was summoned to attend Mrs. Levin at her home about midnight, January 3, 1957, where he examined her and aspirated both knees. The appearance of the extracted fluid did not indicate the presence of infection. However, it was decided because of Mrs. Levin's condition that it would be advisable to have her in a nursing home. The next day, January 4, 1957, she was admitted to the Anglecott Sanatorium under the care of Doctor Rosenfeld. Her condition did not improve and Mr. Levin became alarmed and had his wife transferred to Jefferson Hospital on January 19, 1957. Doctor Rosenfeld did not attend Mrs. Levin thereafter. She remained a patient in Jefferson Hospital until April 6, 1957. Later, on two occasions, Mrs. Levin was a patient in Jefferson Hospital.

The issues raised by appellants are the refusal of the trial judge to permit plaintiffs; (1) to prove defendant physician remained silent when plaintiff accused him of fault and demanded payment for the costs of the illness; (2) to prove that defendant physician mailed a check to plaintiffs; (3) to prove defendant Jane W. Van Horn, as a registered nurse, should have recognized signs of over-medication and should have stopped further administration of drugs to Mrs. Levin.

In order to understand the significance of the proffered evidence it is necessary to know the issue before the trial court for determination. Plaintiffs, in their action against Doctor Rosenfeld, charged him with malpractice in negligently introducing a staphylococcus infection into Mrs. Levin's knees and failing to employ the usual and accepted standards of the medical profession in diagnosing her condition after he was placed on notice of the likelihood of infections, and in over-medicating Mrs. Levin in an effort to cure her.

There was evidence that the infection of the knees developed after Mrs. Levin was hospitalized and that she was not infected at the time of her admission. Much expert medical testimony was submitted to the jury which is not relevant here. Subsequent to Mrs. Levin's admission to the hospital in January, 1957, Mr. Levin called Doctor Rosenfeld on the telephone. Mr. Levin told Doctor Rosenfeld in narrative form[1] his wife's condition at the time of transfer from Anglecott to Jefferson Hospital and the information given to Mr. Levin by three attending physicians who examined her immediately upon admittance. He related in detail the subsequent events, including tests made and the treatment given and the response of Mrs. Levin to the medical treatment, as he had been informed by the physicians in attendance. Mr. Levin told Doctor Rosenfeld that in the opinion of certain physicians at Jefferson Hospital, there was no justification for Mrs. Levin having received cortisone injections and that these injections introduced the staphylococcus infection into her knees and she had been over-medicated in an attempt to cure. After relating the medical report Mr. Levin went on to say "The attending physicians as I've said before all agree that my wife's illness was induced by her physician and on several occasions they asked me who our physician was. I told them that I would rather not discuss it.

"However, since it was your fault, I think that you ought to know that so far, the Jefferson Hospital bill is 877 dollars and this is in addition to what I paid at the Anglecott Sanatorium and which does not include the attending physicians and consultant's fees. There is also an indication that my wife will probably have to spend from three to four weeks longer at the hospital before she can come home and will have to have

---

[1] This was a prepared memorandum numbered as an exhibit but not received in evidence.

treatments after she gets home. My wife did not have to be ill like this and no amount of money will ever repay for her suffering. But I do believe that you should of your own conscientiousness assume all the cost of her illness."

The trial judge would not permit this evidence. Appellants contend these statements made by Mr. Levin were not offered for the purpose of proving the truth of the matter contained in the statements but rather as evidence of an admission based upon Doctor Rosenfeld's silence in response thereto. The appellants were attempting to prove an admission by silence. The trial judge ruled correctly in rejecting this evidence. *Smith v. American Stores Company,* 156 Pa. Superior Ct. 375, 379, 40 A. 2d 696 (1945) : "The rule is thus stated, in 31 C.J.S., Evidence, §295: 'The failure of a party to reply to a statement made in his presence or hearing is significant only where the nature of the statement, and the circumstances under which it was made, are such as render a reply natural and proper.' Where, for example, incriminating statements are made in the presence and hearing of one accused of crime while he is in custody, his silence generally is admissible as an implied admission of the truth of the charges so made. Com. v. Vallone, 347 Pa. 419, 32 A. 2d 889. But even in criminal cases the circumstances must give rise to the duty to answer if the accused would avoid the inference of acquiescence in the assertion made in his presence. 'Silence is considered an admission, only when the circumstances are such that one ought to speak and does not': Com. v. Coyne, 115 Pa. Superior Ct. 23, 175 A. 291. In that case a defendant had been introduced as 'one of the bosses' of a gambling house and failed to deny it. We held that his silence could not be taken as a tacit admission that he was a proprietor. Compare Vail v. Strong, 10 Vt. 457; Mattocks v. Lyman, 16 Vt. 113; Beck v. Dye, 92 P. 2d 1113.

"On an accusation of negligence giving rise to a civil action, if one is restrained by fear or doubt as to his rights, or by the belief that his interests will be best promoted by his silence, then no inference of assent can be drawn from that silence. 'Nothing can be more dangerous than this kind of evidence; it should always be received with caution, and never ought to be, unless the evidence is of direct declarations of that kind, which naturally calls for contradictions, . . . .': Moore v. Smith, 14 S. & R. 388, 393."

Appellants attempted to offer in evidence Doctor Rosenfeld's check payable to cash in the amount of two hundred dollars, which was dated June 27, 1957 and uncashed, and the envelope in which it was mailed to Mr. Levin, together with two letters to Doctor Rosenfeld from Mr. Levin. The letter of April 1957 told of Mrs. Levin's release from the hospital and transfer to a Rehabilitation Center. It described her condition and related the therapy to be given Mrs. Levin. Mr. Levin said he paid all the hospital bills but had not received the attending physicians' statements. In the letter of May 1957, Mr. Levin said he had taken his wife home. He described her condition and the necessary arrangements made for her and the nursing and medical care which she would require while at home. The letter set forth in detail the expenses paid and those incurred but not paid, and the money Mr. Levin borrowed. The letter went on to say that when the final statements were received he would call the Doctor to have his insurance representative call on Mr. Levin.

The letters and check, as well as the prior telephone conversation, were offered for the limited purpose of showing an accusation and demand for payment followed by subsequent demands and then the receipt of the unexplained check. The appellants contend that this evidence is relevant as evidence of responsibility on the part of the Doctor.

The trial judge rejected the appellants' offer on the ground that it was self-serving. It was self-serving and properly rejected. An attempt then was made by appellants to introduce this evidence by deleting portions of the letter and phone conversation that were objectionable. The trial judge considered the letters, check and prior phone call related and denied the admission of any part. Indeed, it would have been difficult, if not impossible, to delete the objectionable portions when the proffered evidence consisted of nearly all objectionable matter. If, as appellants contend, the only purpose was to show a continuing demand or a prior demand, it was a simple thing to do, if done in a proper manner. The mere fact of the demand alone could have been stated. A similar situation—legally if not factually—arose in *Emmons v. McCreery,* 307 Pa. 62, 160 A. 722 (1932). The plaintiff sent a letter to the defendant demanding payment of his supposed loss and therein set forth a complete cause of action for the loss. The Court said (p. 66) : "This is a novel way to seek to sustain a cause of action. If such a letter is admissible without qualifications, a suitor could have his attorney send in letter form to his adversary a statement of facts, true or untrue, setting forth a complete claim, and, on receipt of an answer, have the letter admitted in evidence as substantive proof of the claim, or, in case of failure to reply, also admit the letter. See Wigmore, Section 1073.

"The rule that self-serving declarations, made by a party to an action before suit is brought, whether verbal or written, are inadmissible when offered on behalf of the party who made them, is established by an unbroken line of decisions. [Citing cases]."

The trial judge properly excluded the evidence as proffered. As aptly said in the opinion for the court en banc: "The Court considered the check and the letters as a 'package' offered to prove by indirection and

by inadmissible self-serving declarations that which plaintiffs were unable to prove directly by any of their witnesses."

Appellants, in their claim against the Van Horns, aver that Mrs. Levin manifested signs of over-medication which should have been recognized and further medication stopped.

The trial judge refused to permit a registered nurse, called by the plaintiffs, to testify from the Nursing Home records as to signs of over-medication. The judge based his ruling on the absence of the averment in the amended complaint alleging a failure to note over-medication as an averment of negligence. There was an averment charging the defendants with failure to give proper, timely and adequate nursing care and attention. This general allegation in the circumstances of the instant case was insufficient to permit evidence of the specific negligence of failure to notice any manifestation of over-medication. The trial judge properly excluded evidence of over-medication in the absence of an affirmative allegation of such.

Judgments affirmed in both appeals.

Mr. Justice MUSMANNO dissents.