J-S53032-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| CHARLENE M. BUCKLEY | | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | | |
| JAMES F. BUCKLEY | | |
| Appellant | | No. 2158 MDA 2015 |

Appeal from the Order Entered November 13, 2015
In the Court of Common Pleas of Berks County
Civil Division at No(s): 13-19530

BEFORE:  BOWES, SHOGAN AND FITZGERALD,* JJ.

MEMORANDUM BY BOWES, J.;                    **FILED MAY 01, 2017**

James F. Buckley ("Husband") appeals the order granting a three-year extension of an existing protection from abuse ("PFA") order in favor of Charlene M. Buckley ("Wife").  We affirm.

Husband and Wife are the divorced parents of four minor children. Prior to the dissolution of their marriage, Wife filed a petition pursuant to the Protection From Abuse ("PFA") Act.  On August 21, 2013, the trial court entered by consent a PFA order that expired eighteen months later, February 21, 2015, and permitted Wife to petition the court for a second eighteen-month term of protection, i.e., until August 21, 2016.  Husband violated the PFA during 2014, by repeatedly communicating with Wife by telephone and text message, and he pleaded guilty to indirect criminal contempt.

_____
* Former Justice specially assigned to the Superior Court.

On February 5, 2015, Wife filed a petition to extend the final PFA order. By agreement, the trial court extended the PFA to May 22, 2015. The trial court summarized the subsequent procedural history as follows:

On May 1, 2015, by agreement of the parties, another extended and amended final order was entered by the Honorable Madelyn S. Fudeman. The Order provided that [Wife] maintain primary physical custody of the children, subject to any later entered custody order. The parties were permitted contact with one another via email for purposes of the children. Either party was permitted to return to court in three months to petition for extension or modification of the Order for any or all of [Wife] and children. The Order's expiration date was set for August 7, 2015.

By separate order also dated May 1, 2015, [Husband] was ordered to submit to inpatient alcohol rehabilitation at a facility in Kentucky and follow and successfully complete all recommendations of the facility's staff.

On August 6, 2015, [Wife] appeared *ex parte* before the Honorable A. Joseph Antanavage with an Emergency Petition for Extension of Final Order and obtained another extension until September 11, 2015 to allow for another hearing opportunity. Among other things, the [p]etition alleged that [Husband] was stalking [her] on Facebook and posting threatening messages.

On September 11, 2015, [Husband] failed to appear. The PFA Order was further extended and a hearing was scheduled for October 2, 2015. On October 2, 2015, [Husband] again failed to appear and the hearing was re-scheduled for November 13, 2015.

[Husband] requested that he be permitted to participate in the November 13, 2015 hearing by telephone. For the reason that telephonic participation makes it difficult for the Court to assess a witness's credibility because of not being able to view facial expressions and body language, the Court denied the request. [Husband] did not appear for the hearing, but his counsel did. The Court permitted [Wife] to present her case.

. . .

- 2 -

> After hearing [Wife's] case and considering [Husband's] failure to appear and present a counter-case, the Court entered a three-year order for the protection of Plaintiff and the parties' children.

Trial Court Opinion, 1/20/16, at unnumbered 4-5.

The trial court found that Wife adduced sufficient evidence pursuant to § 6108 of the PFA Act to warrant extending the terms of the original PFA order that was entered during 2013.[1] The trial court explained from the bench that, by fashioning an order that restricted Husband's contact with Wife to one inquiry about the children per week, it anticipated stopping Husband's repeated emails, which Wife described as possessive, controlling and forceful. The court also noted that, in reaching its decision to extend the PFA order, it considered Husband's failure to comply with any of his court-ordered treatment requirements as well as his absence from the hearing.

---

[1] The relevant section provides,

> An extension of a protection order may be granted:

> > (i) Where the court finds, after a duly filed petition, notice to the defendant and a hearing, in accordance with the procedures set forth in sections 6106 and 6107, that the defendant committed one or more acts of abuse subsequent to the entry of the final order or that the defendant engaged in a pattern or practice that indicates continued risk of harm to the plaintiff or minor child.

23 Pa.C.S. § 6108(e)(1)(i).

The trial court's Pa.R.C.P. 1925(a) opinion further explained,

[Husband] violated the original final PFA Order less than six months after it was entered. He further violated the Order by failing to submit to addiction treatment. [Husband] also failed to submit to an evaluation designed to determine whether the children would be safe in his presence. Adding [Husband's] use of anger-exacerbating drugs to his lack of treatment equals a practice indicative of a continued risk of harm. [His] threatening posts on Facebook, comments regarding the imminent expiration of the final PFA Order, and comments to [Wife] about his watching her home together with the previous violations of the PFA Order and its amended extensions demonstrate a pattern indicating a continued risk of harm. Furthermore, it was readily apparent that [Wife] suffered from a reasonable fear of bodily injury at [Husband's] hands.

The original final PFA Order and its extensions covered a period of more than two years. During that time, [Wife] and the children have been protected, but the pattern indicative of continued risk of harm from [Husband] has not been broken. The sufficiency and weight of the evidence warranted a three-year extension.

Trial Court Opinion, 1/20/16, at unnumbered 6-7.

Husband filed a timely notice of appeal and complied with the trial court's order to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). The Rule 1925(b) statement leveled five issues which the trial court addressed in its ensuing opinion. Husband asserts the same five issues for review, which we edited and reordered for ease of disposition and to be consistent with the trial court opinion. Specifically, Husband argues that the trial court erred when it: (1) drew an adverse inference from Husband's absence from the hearing; (2) admitted evidence of Husband's Facebook posts that were not properly authenticated;

- 4 -

(3) considered events that occurred prior to the most recent extension of the PFA order on May 1, 2015; and (4) determined that the weight and sufficiency of Wife's evidence warranted a three-year extension of the PFA Order. **See** Husband's brief at 6. We address the issues *seriatim*.

"We review the propriety of a PFA order for an abuse of discretion or an error of law." **Ferko-Fox v. Fox**, 68 A.3d 917, 920 (Pa.Super. 2013). Our Supreme Court has described this standard as "not merely an error of judgement; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias, or ill will, discretion has been abused." **Depp v. Holland**, 636 A.2d 204, 205–06 (Pa. 1994).

Husband's first assertion contends that the trial court erred in drawing an adverse inference against him due to his failure to appear at the scheduled PFA proceeding. The crux of Husband's complaint is that the trial court equated Husband's absence with his disrespect for the tribunal and relied upon that negative assessment as the primary ground to extend the PFA order. He supports his argument by pointing to the trial court's statements during the hearing that illustrate the court's obvious dissatisfaction with Husband's nonattendance. Asserting that he was never issued an order to appear, and therefore not required to attend the hearing, Husband concludes that the trial court erred both in drawing an adverse

inference from his absence and in relying upon that impression as the principal evidence weighing in Wife's favor. We disagree with both aspects of Husband's contention.

Pursuant to the PFA Act, "An extension of a protection order may be granted . . . [w]here the court finds . . . that the defendant committed one or more acts of abuse subsequent to the entry of the final order or that the defendant engaged in a pattern or practice that indicates continued risk of harm to the plaintiff or minor child." 23 Pa.C.S. § 6108(e)(1)(i). Instantly, the trial court found that Wife satisfied her burden of proof by adducing evidence that Husband (1) violated a prior PFA order by sending Wife harassing telephone and text messages; (2) continued to write menacing posts on social media; and (3) failed to stop ingesting anger-exacerbating drugs or submit to either addiction treatment or an evaluation to confirm the safety of his children while in his presence. **See** Trial Court Opinion at unnumbered 6-7.

Husband's preoccupation with the trial court's admonition for his failure to attend the hearing not only mischaracterizes his absence, but it also exaggerates the court's reliance upon the nonappearance in reaching its ultimate determination. Husband concedes that he received a hearing notice that ordered him to attend the November 13, 2015 evidentiary hearing if he wished to defend against Wife's claim. Specifically, the notice provided, "If you fail to [attend], the case may proceed against you and a FINAL order

may be entered against you granting the relief requested in the petition[.]" Notice of Hearing, 9/11/15, at 1. Husband implies that, since the notice order did not issue an express directive to appear, such as a subpoena, he was not legally compelled to attend. Had the trial court granted the three-year PFA extension purely as a sanction for Husband's absence, it would have been improper. That, however, did not occur. In reality, the trial court detected Husband's cavalier attitude about the PFA proceedings and concluded that Husband's nonattendance signaled his disregard for the tribunal, which, combined with Wife's testimony and documentary evidence, established grounds to extend the terms of the PFA order. Accordingly, we reject Husband's allegation of trial court error.

More importantly, our jurisprudence authorizes the use of negative inferences to corroborate a plaintiff's evidence and to illuminate a clouded factual dispute. *See Harmon v. Mifflin Co. Sch. Dist.*, 713 A.2d 620 (Pa. 1998). Husband's absence from the hearing is analogous to a civil defendant's refusal to testify insofar as Husband could not testify at a hearing that he declined to attend.[2] In *Harmon*, *supra* at 623, our Supreme Court reiterated the well-ensconced principle in civil proceedings

---

[2] PFA proceedings are civil in nature. *See Weir v. Weir*, 631 A.2d 650 (Pa.Super. 1993); *Commonwealth v. Nelson*, 690 A.2d 728, 731 (Pa.Super. 1997) (unlike criminal prosecution alleging violation of existing PFA order, proceeding to obtain PFA order is civil in nature).

that "a party's failure to testify can support an inference that whatever testimony he could have given would have been unfavorable to him." As the High Court observed, however, the inference is insufficient in itself to permit the civil plaintiff to satisfy the burden of proof without independent evidence supporting their claim. The **Harmon** Court succinctly summarized this point as follows,

> Our case law indicates that the inference to be drawn from a party's failure to testify serves to corroborate the evidence produced by the opposing party. Also, the failure to testify to facts within one's presumed knowledge permits an inference that can erase the equivocal nature of other evidence relating to a disputed fact. However, we have never suggested that a party could satisfy its burden of proof in a civil cause solely through reliance on the defendant's failure to testify.

*Id*. at 623-624 (citations omitted).

As outlined in the preceeding discussion, there is nothing inherently prejudicial about the trial court's decision to draw an adverse inference from Husband's absence, and the trial court did not err when it relied upon the inference in conjunction with the competent evidence that Wife adduced during the hearing. This claim fails.

Husband's next contention of error concerns Facebook posts that he published during November of 2014. He asserts that the trial court erred in admitting printouts of the posts into evidence as not authenticated. However, as explained *infra*, any error relating to the admission of the exhibits is harmless because Husband failed to proffer a contemporaneous

objection to Wife's concomitant testimony describing the documents during the hearing. Thus, no relief is due.

The following facts are relevant to this determination. During the evidentiary hearing, Wife testified about two exhibits, which were marked for identification purposes as Plaintiff's Exhibit 1 and Plaintiff's Exhibit 2. Specifically, without objection, Wife identified Husband's Facebook entries that was memorialized in Exhibit 1 and testified that the posts were typical of the type that Husband regularly posted about her and the children on his page. N.T., 11/13/15, at 11.

She also identified a specific Facebook post from November of 2014 wherein Husband displayed two songs with lyrics that she considered threatening. *Id*. at 10, 11-12. She stated, "He posts song lyrics, he posts different threatening type posts. I know for one post . . . he posted the lyrics to Guns and Roses['] [song] I Used to Love Her." *Id*. at 10. Referencing Plaintiff's Exhibit 2, again with no objection, Wife identified a printout of the songs' lyrics and explained her fear, "The one [song] states, 'I used to love her but I had to kill her. I used to love her, but I had to kill her. I had to put her six feet under and I could still hear her complain.'" *Id*. at 12. The other lyric, which she identified as the Rolling Stones' Dead Flowers, ended with the promise, "No, I won't forget to put roses on your grave." *Id*. She described the post's effect as "a direct threat to myself and, you know, I'm

all my kids have. And if he comes after me[,] they don't have anybody else to take care of them because he is not going to." *Id*. at 13.

Thereafter, Wife stressed that Husband's Facebook postings have been an ongoing issue in the PFA case and that the songs that he chose to display demonstrated his unwillingness to curb his menacing behavior. "Nothing has really changed . . . [he is] not getting the help he needs, and we are at the same place we were at two years ago." *Id*. Thereafter, Wife testified about her concern over Husband's emails, his outbursts of rage, and his utter disregard of the PFA order—including his failure to comply with any of his court-ordered treatment requirements. *Id*. at 13-21. As it related to Husband's adherence to the PFA, Wife testified, "[F]rom the minute the order was put in place . . . he disregarded [it]. I was getting up to 15 phone calls a day while he was in jail. And I felt bad for him and I wanted him to get help so I didn't report it until he finally got to the point that he was threatening and not getting the help he needed." *Id*. at 13.

All of the foregoing testimony regarding Plaintiff's Exhibit 1 and Plaintiff's Exhibit 2 were admitted into evidence without objection. Indeed, Husband's counsel did not level an objection relevant to this issue until after Wife moved for the exhibits' admission at the close of her case in chief. At that point, counsel objected to the exhibits' admission on what amounted to a lack of authentication and as an afterthought requested "I would say that [Wife's] testimony regarding the Facebook posts be stricken[.]" *Id*. at 29.

- 10 -

While Husband would argue that his belated objection to Wife's testimony was sufficient to preserve the issue for appeal, presumably because the portion of the objection relating to the physical exhibits was contemporaneous, we find that the objection is stale as it relates to the testimonial evidence.

The principle that a party must make a timely and specific objection at trial in order to preserve an issue for appellate review is a well-ensconced tenet of our jurisprudence. As it relates to a trial court's decision to admit evidence, pursuant to Pa.R.E. 103(a)(1), a party must assert a contemporaneous objection in order to preserve his claim that the court erred in the admission of evidence. In pertinent part, Rule 103(a)(1) provides,

> **(a) Preserving a Claim of Error.** A party may claim error in a ruling to admit or exclude evidence only:
>
> (1) if . . . a party, on the record:
>
>> (A) makes a timely objection, motion to strike, or motion in limine; and
>>
>> (B) states the specific ground, unless it was apparent from the context; or

Pa.R.E. 103(a)(1).

Hence, Rule 103(a)(1) provides that a party must level a contemporaneous objection when evidence is offered so that the court may resolve any error at the time it is committed. *See Commonwealth v.*

*Baumhammers*, 960 A.2d 59, 73 (Pa. 2008) (to preserve issue for appellate purposes, party must make timely and specific objection to ensure trial court has opportunity to correct alleged error); *Keffer v. Bob Nolan's Auto Service, Inc.*, 59 A.3d 621, 645 (Pa.Super. 2012) (citations omitted) (emphasis added) ("one must object to errors, improprieties or irregularities **at the earliest possible stage** of the adjudicatory process to afford the jurist hearing the case the first occasion to remedy the wrong and possibly avoid an unnecessary appeal to complain of the matter."). Thus, evidence which is admitted without objection is given its natural probative value. *See* Ohlbaum on the Pennsylvania Rules of Evidence § 103.06(1) at 28 (2006) citing *Jones v. Spidle*, 286 A.2d 366 (Pa. 1971) (hearsay admitted without objection treated as properly admitted substantive evidence).

Furthermore, as it relates to the particular facts of the present case, our Supreme Court explained in *Jones*, *supra* at 368, that "a motion to strike inadmissible testimony . . . will be denied if it is made after direct and cross-examination have been completed and the party had reason to know of the [error]." Instantly, Husband's counsel permitted Wife to testify about the Facebook posts on direct examination, exercised his right to cross-examination, albeit not on that issue, and only then moved to strike the testimony at the close of Wife's evidence. The High Court disapproved of this precise scenario in *Jones*. Accordingly, in light of Husband's failure to object to Wife's extensive testimony regarding his posts on Facebook, we

find the testimony admissible substantive evidence that the trial court properly accorded its natural probative value.[3]

Moreover, Husband's belated objection to Wife's testimony in conjunction with his challenge to the physical exhibits is immaterial. Indeed, assuming, arguendo, that the trial court erred in admitting Plaintiff's Exhibit 1 and Plaintiff's Exhibit 2 without proper authentication under Pa.R.E. 901, Pennsylvania Rule of Civil Procedure 126, regarding liberal application of the rules, permits courts to disregard an erroneous ruling that "does not affect the substantial rights of the parties." Pa.R.C.P. 126. Instantly, Husband's rights were not affected by the allegedly improper ruling on the physical exhibits because the trial court had previously heard Wife's testimony without objection wherein she described the Facebook posts in detail. Thus, barring the exhibits' admission at that juncture would not have negated the consequences of Wife's unopposed testimony. Accordingly, we find no basis for relief.

_____

[3] We observe that the notes of testimony from the November 13, 2015 hearing include the court reporter's note, "At the direction of the Trial Judge, this transcript shall be considered as containing an exception to every ruling by the Court." N.T., 11/13/15, at 3. This notation does not excuse Husband's failure to object to Wife's testimony because, absent the requisite objection, there was no ruling for the court to deem preserved. Indeed, as noted in the body of this memorandum, without a timely objection, the testimony was necessarily deemed properly admitted substantive evidence.

Having found that Husband waived his objection to Wife's testimony about his Facebook posts and that the trial court did not err in drawing an adverse inference from Husband's failure to attend the PFA hearing, we reject Husband's claim that the trial court erred in considering evidence of his offensive behavior prior to May 1, 2015, the date of the most recent PFA order. Noting that the Facebook posts were published in November of 2014, and that he neither harmed Wife nor threatened to harm her in email communications since the current PFA to effect, Father asserts that the certified record covering the relevant period does not reveal one or more acts of abuse or a continued risk of harm to Wife or their children. Again, we disagree.

This Court has held that "the Protection from Abuse Act requires flexibility in the admission of evidence and that **prior instances of abuse are relevant and admissible**." **Hood–O'Hara v. Wills**, 873 A.2d 757, 761 (Pa.Super. 2005) (emphasis added). Clearly, Husband argues in favor of a time restriction because it would insulate him from his lengthy and disturbing history of conduct towards Wife. That consequence is incompatible with the Act's purpose of preventing future abuse. **Snyder v. Snyder**, 629 A.2d 977, 981 (Pa.Super. 1993) ("the primary goal of the PFA Act is . . . advance prevention of physical and sexual abuse."). Hence, we conclude that the PFA court's consideration of Husband's prior instances of abuse, including the Facebook posts from 2014, was not legal error.

- 14 -

Contrary to Husband's protestations, his earlier conduct is relevant to Wife's perception of his recent behavior in the context of their entire relationship. *See Burke ex rel. Burke v. Bauman*, 814 A.2d 206, 209 (Pa.Super. 2002) (holding, *inter alia*, that verbal threats alone were sufficient for a person to be placed in reasonable fear of imminent bodily injury, "particularly when coupled with the alleged abuser's past history of violence"). Thus, no relief is due.

As it relates to the remaining claims regarding the weight and sufficiency of the evidence, we reject Husband's contention for the reasons the trial court explained in its Trial Court Opinion at unnumbered pages 6-7, which we reproduced *supra*. As the trial court stated in summarizing its conclusion, "Sufficient, credible, uncontroverted evidence was presented for the Court to find that [Husband] committed one or more acts of abuse subsequent to the entry of the final order and that [Husband] engaged in a pattern of behavior that indicated continued risk of harm to [Wife] and the parties' minor children." *Id*. at unnumbered 8.

For all of the foregoing reasons, we affirm the trial court's decision to grant the three-year extension on Wife's existing PFA order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/1/2017