OSTROFSKY ET AL. *v.* MARYLAND EMPLOYMENT SECURITY BOARD ET AL.

(Two Appeals in One Record)

[No. 108, September Term, 1958.]

*Decided January 19, 1959.*

*Motion for rehearing filed February 4, 1959, denied February 12, 1959.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Fred E. Weisgal,* with whom was *Stanley Sollins* on the brief, for the appellants.

*J. Robert Brown, General Counsel, Maryland Department of Employment Security,* with whom were *C. Ferdinand Sybert, Attorney General, Bernard S. Melnicove, Special Assistant Attorney General,* and *James N. Phillips, General Counsel,* on the brief, for the appellees.

HENDERSON, J., delivered the opinion of the Court.

These two appeals in one record are from the judgment of a trial court affirming a decision of the Maryland Employment Security Board denying unemployment compensation on the ground of misconduct, under Code (1951), Art. 95A, sec. 5 (b).

The appellants had been employed by Bethlehem Steel Co. as welders, carpenters, or in similar capacities, for about eight years or more, prior to May, 1957. The five appellants were summoned to appear before the Congressional Committee on Un-American Activities, in Baltimore, on May 7, 1957. At these hearings they were identified by a witness as being members of the Communist party, and, when questioned as to their past and present connections therewith, invoked their constitutional privilege against self-incrimination and refused to answer. These hearings received wide publicity referring specifically to the appellants and their employer. On May 8, 1957, they received notices from the Company that they were suspended, without pay, as (1) security risks and (2) having engaged in conduct detrimental to the best interests of the Company. On or about May 15, 1957, they filed claims for unemployment compensation.

At a hearing on May 12, 1957, held by Company officials pursuant to the contract between the Company and United Steelworkers of America, AFL-CIO, the appellants were asked questions similar to those propounded by the Committee. On the advice of their counsel, they refused to answer any of said questions on the ground that they were irrelevant and immaterial, and in no way connected with their work or their job performance. At the conclusion of the hearings,

on May 21, 1957, the appellants were discharged. It may be noted that in the case of the appellant, Seif, however, the Company hearing was not held until August 6, 1957.

Some time thereafter they received notice from a Claims Examiner in the State Department of Employment Security denying their claims on the ground that their discharge was based on findings that they were security risks and had engaged in conduct detrimental to the business interests of the Company. They appealed to the Board of Appeals, and after a hearing on August 7, 1957, the decision of the Examiner was affirmed, except that the Board fixed the date of disqualification as May 8, 1957, the date of suspension by the Company, rather than the earlier dates set by the Examiner. The Board filed an opinion stating that "the proximate cause of the unemployment of these * * * claimants was their action at the hearings conducted pursuant to the labor-management contract * * *. The employer had a right to expect the employees to answer questions which would give the employer the satisfaction or security he needs to protect the plant and his employees." In affirming the decision of the Board, the trial court said: "The discharge of the petitioner was not due to the fault of the Company * * *. If he was not a member [of the Communist party] his refusal to tell the Company so, when the Company had a right to know, was insubordination and deliberate misconduct. It was much more than a personal matter. It was connected with his work."

The appellants contend that the denial of compensation was based solely on the fact that they refused to answer questions put to them by the Committee. Certainly the suspension was based upon their conduct before the Committee. But their discharge was based on their failure to answer at the Company hearing. If the discharge had been based solely on their conduct before the Committee, we would agree that the refusal to answer there, if misconduct at all, was not misconduct connected with their work. We have so held in a similar case, just decided. *Fino v. Md. Emp. Sec. Bd.,* 218 Md. 504. But it seems clear on the record that the Board's action, and the action of the trial court, was predicated on their refusal

to answer questions at the Company hearings. That poses a different question, not considered in the *Fino* case.

At the outset, it is important to note that the discharge, as distinguished from the suspension, was not based upon an invocation of the privilege against self-incrimination. If we assume, without deciding, that the assertion of that privilege would not amount to misconduct, the record is clear that at the Company hearings the only objections to the questions propounded were based upon their relevance or materiality. In common parlance, they took the position that it is "none of your business." We think the objections were not well founded. An employer engaged in an essential industry has a right to inquire into the outside activities of its employee, that may adversely affect the prosecution of the work. Steel may be described as the backbone of the industrial economy, and a chief sinew of war. The Company had a number of defense contracts with the government. It was a proper subject of inquiry by the Company to ascertain whether the appellants were active members of a party that has been frequently characterized as engaged in a conspiracy to overthrow the government by force and violence, and particularly by the sabotage of essential industries in the event of war. Code (1951), Art. 95A, sec. 5 (b) denies unemployment benefits if the discharge is due to misconduct connected with the work, whether such misconduct be "actual or threatened." It was not irrelevant for the employer to ask its employees whether they were members of such a party, regardless of whether doubts as to their trustworthiness and reliability were raised by the Committee hearings, or by rumor and report. The Supreme Court cases of *Garner v. Los Angeles Board,* 341 U. S. 716, *Beilan v. Board of Education,* 357 U. S. 399, and *Lerner v. Casey,* 357 U. S. 468, indicate that such inquiries are relevant, and do not violate the 14th Amendment, at least where an opportunity to refute the charges is offered. See also note, 51 A. L. R. 2d 742.

The crucial question in the instant case is whether the refusal to answer questions designed to elicit information along these lines was misconduct connected with their work. We indicated in the *Fino* case that conduct outside the employ-

ment relationship, in the circumstances there presented, did not establish a connection, merely because it might make retention of the employee incompatible with the employer's interests. Mrs. Fino was not discharged as a security risk. The employer did not see fit to inquire into the truth or falsity of the charge that she was, or had been, a Communist party member. Her discharge was not based on any breach of duty to her employer, but simply because some customers did not like her supposed principles. We think the instant case is distinguishable. Here, the employees were interrogated directly. It is true that no question was raised as to the performance of the particular work to which they were assigned, but it was implicit in the employment relationship that they should answer proper inquiries directed towards threatened misconduct. The employment contract not only obligated them to perform the work assigned, satisfactorily, but it also imposed other obligations, such as a duty to answer proper questions related to the security and safe conduct of the business. Failure to disclose their beliefs and affiliations in a matter vital to the future conduct of the business, and affecting not merely their suitability, but their trustworthiness and reliability in the work, was, we think, misconduct sufficiently connected with the work to raise a bar to benefits under the statute.

We are referred to no cases in the appellate courts on this precise point, but a similar case was decided on December 11, 1958, by the Superior Court of Pennsylvania. *Ault v. Unemp. Comp. Bd.,* 146 A. 2d 729. The court recognized that even though it was "wilful misconduct" for an employee of the Bethlehem Steel Company to decline to answer questions put by his employer as to his Communist connections, it was still necessary, under the statute, to show that the misconduct was "connected with his work." A connection was found in the security requirements of a manufacturing concern with government orders.

Since we hold that the refusal to answer the questions propounded at the hearing before the Company officials was deliberate and wilful misconduct in connection with their work, we would ordinarily affirm the judgment appealed from. We

note, however, that the action of the trial court, as well as the action of the Board, was based on a finding of misconduct at the hearings on May 21 and, in the case of Seif, August 6, 1957. We are unable to find any ground upon which the Board's order that the disqualification run from May 8, 1957, or the dates of suspension in each case, could be sustained. It may well be that the Board's finding, in effect, that there was no misconduct prior to the refusal to answer at the hearing before Company officials, would have been a complete answer to the charges laid on the basis of conduct before the Congressional Committee. It would seem that the appellants might have been entitled to a hearing on new charges, based on the subsequent misconduct which the Board found. However, no such procedural point was raised on this appeal, and we have decided the case on its merits. We think, however, that the judgment of the lower court should be modified, so as to remand the case to the Board for a modification of its order fixing the dates of disqualification so as to allow compensation up to the time of discharge, rather than the time of suspension, because the misconduct relied on occurred on the date of hearing and discharge, and not on the earlier date.

> *Judgment affirmed in part, reversed in part, and case remanded, costs to be divided equally between the appellants and the appellees.*