Ault Unemployment Compensation Case.

Argued November 9, 1959. Before Jones, C. J., Bell, Jones and Bok, JJ.

*Sidney G. Handler,* with him *John P. Campana,* and *Goldberg, Feller & Bredhoff* (of the Washington. D.C. Bar), for claimant, appellant.

*Sydney Reuben,* Assistant Attorney General, with him *Anne X. Alpern,* Attorney General, for Unemployment Compensation Board of Review, appellee.

*William H. Wood,* with him *Leon D. Metzger,* and *Hull, Leiby and Metzger,* for employer, intervening appellee.

OPINION BY MR. JUSTICE BOK, January 18, 1960:

The question is whether respondent is entitled to unemployment compensation benefits or was guilty of wilful misconduct connected with his work under Section 402(e) of the Act of December 5, 1936, P. L. (1937) 2897, as amended, 43 P.S. §802(e).

The chronology of events is as follows:

On December 8, 1954, appellant was summoned to appear before the Permanent Subcommittee on Investigations of the United States Senate. At this hearing one Thomas, a member of the Communist Party reporting to the Federal Bureau of Investigation, identified appellant as an active Communist Party member and organizer between 1946 and 1952. Both men worked for Bethlehem Steel Company, appellant as a wire driller. When called upon to testify, he took the protection of the Fifth Amendment to the United States Constitution and refused to say whether he was or had ever been a Communist or whether he had ever given to the Party information about the internal conditions at Bethlehem Steel. At one point in the hearing he jumped up and shouted that Thomas was a "lying stoolpigeon".

On December 13, 1954, the Acting Director of the Senate Committee notified the Secretary of Defense

that in the Committee's opinion persons who invoked the Fifth Amendment were not suitable employes in a defense plant and recommended that the Secretary withdraw defense contracts from any corporation employing Communists or those who refused to affirm or deny their subversive connections. The Acting Director also sent to Bethlehem Steel a copy of the testimony and a copy of his letter to the Secretary of Defense.

On December 14, 1954, the Company sent to appellant a notice reading: "You are hereby suspended and it is the intention of the Company to discharge you five days from the date of this notice." This was in accordance with the Company's labor contract. A copy was sent to the Acting Director of the Senate Committee.

On December 16, 1954, appellant asked for hearing on his suspension.

On December 18, 1954, the Company sent notice to appellant of a hearing to be held December 28th and gave as its reasons for suspending him: (1) that he was a security risk, (2) that he had engaged in conduct detrimental to the business interests of the Company.

On December 28, 1954, the hearing was held. It consisted largely of the presiding officer's offering appellant opportunity to show cause why he should not be discharged and of appellant's refusing to do so until he had been given proof of the charges. The following statement by him is indicative: "He [Young, who signed the Company's letter stating the reasons for suspension] accuses me of being a security risk. I say I am not a security risk. And he accuses me of conduct detrimental to the business interests of the Company. I say I am not. Let him prove it."

On December 30, 1954, the Company sent appellant a letter of discharge, effective at once.

On January 7, 1955, appellant served on the Company notice of grievance and a request for reinstatement.

On March 1, 1955, having applied for unemployment compensation, appellant was given a hearing before the Referee, following a denial of benefits by the Bureau.

On April 22, 1955, the Referee filed his decision denying the claim, basing his action upon "claimant's failure to deny membership in the Communist Party" and saying that while appellant had the right to claim the protection of the Fifth Amendment, his doing so injured his employer and was wilful misconduct connected with his work.

On August 2, 1955, arbitration was held under the labor contract upon appellant's grievance. On August 8th the Arbitrator found that the Company had had just cause to discharge him on the single ground of security. He expressly avoided finding whether the witness Thomas had testified truthfully and based his conclusion of just cause on appellant's refusal to co-operate with the Senate Committee. At this proceeding appellant specifically denied that he was a Communist on December 7, 1954, or thereafter, but he invoked the Fifth Amendment when asked whether he had ever been one.

On October 9, 1957, the Board of Review adopted the Arbitrator's position and sustained the Referee.

On December 11, 1958, the Superior Court affirmed the Board of Review *sub nomine*: *Ault Unemployment Compensation Case*, 188 Pa. Superior Ct. 260 (1958), 146 A. 2d 729. Its reasons were two: (1) appellant refused to furnish information to the Compensation authorities bearing upon his right to compensation; (2) he was guilty of wilful misconduct connected with his work when he refused to answer the charges against him when called upon by his employer to do so.

It is obvious at the outset that no one ever made a finding that the witness Thomas, who identified appellant as a Communist before the Senate Committee, was telling the truth or a lie. The Unemployment Compensation Board of Review adopted the view of the Arbitrator, whose opinion was made an exhibit before the Board. In it he said: "It is not for me to make any finding, any more than did the Subcommittee, or the Company itself after the pre-discharge hearing, as to whether or not the witness Herman Thomas testified truthfully."

It is therefore painfully apparent that appellant has lost his livelihood and his compensation because he failed to affirm or deny material that may have been truthful, untruthful, or mistaken. The given reason for discharging him and his claim is that he failed to deny, refused to co-operate, refused to furnish information, and refused to answer charges, as it was variously expressed, and such clauses are only different forms of saying that he was turned away because he invoked the Fifth Amendment. It was the form he took to protect himself, and, as the Referee said, he had every right to do so but his doing it also hurt his employer.

The basic question is whether this follows, and we think it does not.

It must be clearly stated that we have nothing to do with the question of appellant's discharge by his employer. We will discuss it briefly because it bears generally on the basic symposium of due process, but we regard it as a much more sensitive question than whether he should have compensation.

It should be apparent that a man could be a security risk whether he was frank or furtive, and that he could be either without being a security risk. The Board of Review, adopting the Arbitrator's conclusion, bases its decision on his being a security risk only, but with no shred of established evidence to

sustain it. The Superior Court took the other view: appellant refused disclosure and hence wilfully misconducted himself, but without reference to being a security risk.

The nub is missing, and the nub is legally competent proof. The issue of fact between the testimony of Thomas and appellant's denial, that Thomas was a lying stoolpidgeon, remains unresolved on the record.

A more pitiless view of the case is that everyone suspects appellant of being or having been a Communist but no one wants to say so, and it remains a fact suspected but unproved. It has been easier to make a fatal error out of lack of frankness, despite the even chance that either guilt or innocence of Communism may have dictated appellant's decision to invoke the Amendment. Difficulty of proof has never been allowed as an excuse for dispensing with it.

That one becomes myopic upon the mere mention of Communism is apparent from reading the opinion of *Kelleher v. Unemployment Compensation Board of Review*, 175 Pa. Superior Ct. 261 (1954), 104 A. 2d 171, where the wilful misconduct consisted in nothing more subversive than absence from work without leave. The Superior Court said: "Here there is no substantial evidence to support the findings of the compensation authorities to the effect that claimant was 'absent quite frequently without notice' . . . The burden was upon the employer to show circumstances which would bring claimant under the condemnation of a disqualifying provision of the Act, and on the record before us it is not clear that it met that burden."

On the record in the instant case it is clear that the authorities did *not* meet their aforesaid burden of presenting evidence showing appellant to be subversive. Far from assuming any burden of proof, they have sought to make appellant prove his innocence. They showed only that he had failed to disclose, but with no

basic finding of subversion he is entitled to the presumption of innocence set forth in *Slochower v. Board of Education,* 350 U. S. 551 (1956), 76 S. Ct. 637 : "At the outset we must condemn the practice of imputing a sinister meaning to the exercise of a person's constitutional right under the Fifth Amendment. The right of an accused person to refuse to testify, which had been in England merely a rule of evidence, was so important to our forefathers that they raised it to the dignity of a constitutional enactment, and it has been recognized as 'one of the most valuable prerogatives of the citizen'. Brown v. Walker, 161 U. S. 591, 610 [16 S. Ct. 644, 652, 40 L. Ed. 819]. We have reaffirmed our faith in this principle recently in Quinn v. United States, 349 U. S. 155 [75 S. Ct. 668, 99 L. Ed. 964]. In Ullmann v. United States, 350 U. S. 422 [76 S. Ct. 497], decided last month, we scored the assumption that those who claim this privilege are either criminals or perjurers. The privilege against self-incrimination would be reduced to a hollow mockery if its exercise could be taken as equivalent either to a confession of guilt or a conclusive presumption of perjury. As we pointed out in Ullmann, a witness may have a reasonable fear of prosecution and yet be innocent of any wrongdoing. The privilege serves to protect the innocent who otherwise might be ensnared by ambiguous circumstances. See Griswold, the Fifth Amendment Today (1955)."

Appellee cites several cases in the Supreme Court of the United States and elsewhere : *Souder v. Philadelphia,* 305 Pa. 1 (1931), 156 A. 245; *Christal v. Police Commission,* 33 Cal. App. 2d 564 (1939), 92 P. 2d 416; *Faxon v. School Committee of Boston,* 331 Mass. 531 (1954), 120 N.E. 2d 772; *Daniman v. Board of Education, of City of New York,* 306 N. Y. 532 (1954), 119 N.E. 2d 373; *Kaplan v. Philadelphia School District,* 388 Pa. 213 (1957), 130 A. 2d 672; *Board of Public Education v. Beilan,* 386 Pa. 82 (1956), 125 A. 2d

327, affirmed in 357 U. S. 399 (1958), 78 S. Ct. 1317; *Lerner v. Casey,* 357 U. S. 468 (1958), 78 S. Ct. 1311; *Garner v. Board of Public Works of Los Angeles,* 341 U. S. 716 (1951), 71 S. Ct. 909.

These cases uphold the propriety of discharging persons who invoke the Amendment. We repeat that this is not our question. An employer may discharge an employe for any reason or no reason, absent contractual restrictions. But an unemployed person may not be denied benefits for any reason or no reason: the Act allows denial only for wilful misconduct connected with his work. It is here that the appellee's argument breaks down. Since a man may be discharged for any reason or no reason, his ensuing right to unemployment benefits is dependent on whether the discharge was for wilful misconduct. The Compensation authorities must show that it was. The Compensation Act requires that otherwise he should get the benefits. Hence he has the right to await charges and meet them as he thinks best.

Here, with no finding of the truth of Thomas's testimony and hence no finding of appellant's subversion, his invocation of the Fifth Amendment may have been born of guilt or innocence or fear.

At this point we take notice that the employer was under direct pressure from the Senate Committee to discharge appellant or risk loss of its defense contracts. The notice it sent him was to suspend him with the intention of discharging him five days later; this was before a hearing had been arranged. When he asked for one it is not a strain on the imagination to believe that the hearing would be somewhat less than impartial. It may also be noted that appellant met with technical accuracy the statement of the charges against him. He was charged with being a security risk, without proof; he said he was not a security risk, also without proof. He was accused of conduct detri-

mental to the Company's interests, but without speci-
fication; he denied it also, without specification. It
is finally to be noted that the Superior Court accepted
as fact the testimony of Thomas, although nowhere is
there a finding of its truth.

There is no case in point in the United States save
*Ostrofsky v. Maryland Employment Security Board,*
218 Md. 509 (1959), 147 A. 2d 741, in which the facts
are analogous, except that the claimant gave irrele-
vance as a reason for his refusal to answer his employ-
er's questions, after invoking the Fifth Amendment
before the Senate Sub-committee. The Court said: "It
was not irrelevant for the employer to ask its em-
ployees whether they were members of such a party
[i.e., one advocating the overthrow of the government
by force], regardless of whether doubts as to their
trustworthiness and reliability were raised by the
Committee hearings, or by rumor and report."

The Maryland Court held that refusal to answer the
employer's questions was wilful misconduct connected
with the work and denied unemployment benefits. It
then said: "Certainly the suspension was based upon
their conduct before the Committee. But their dis-
charge was based on their failure to answer at the
Company hearing. If the discharge had been based
solely on their conduct before the Committee, we would
agree that the refusal to answer there, if misconduct
at all, was not misconduct connected with their work.
We have so held in a similar case, just decided. Fino
v. Maryland Employment Security Board, Md., 147 A.
2d 738. But it seems clear on the record that the
Board's action, and the action of the trial court was
predicated on their refusal to answer questions at the
Company hearings. That poses a different question,
not considered in the Fino case.

"At the outset, it is important to note that the dis-
charge, as distinguished from the suspension, was not

based upon an invocation of the privilege against self-incrimination. . . ."

The *Ostrofsky* case is therefore no authority for a conclusion of wilful misconduct based upon refusal to answer under the protection of the Fifth Amendment.

The *Fino* case referred to is not apposite because no hearing was given the claimant by her employer and hence her misconduct was not shown to have been connected with her work.

We are unwilling to engraft upon our law the notion, nowhere so decided, that unemployment benefits may be denied because of raising the bar of the Amendment against rumor or report of disloyalty or because of refusing to answer such rumor or report. The possible abuses of such a doctrine are shocking to imagine, and we will not hold that to do so, without more, is wilful misconduct connected with the work.

The judgment of the Superior Court is reversed.

Mr. Justice MCBRIDE took no part in the consideration or decision of this case.

DISSENTING OPINION BY MR. JUSTICE BELL:

I would affirm on the opinion of the Superior Court which on the points here involved was unanimous.