WATKINS *v.* EMPLOYMENT SECURITY
ADMINISTRATION ET AL.

[No. 396, September Term, 1971.]

*Decided July 3, 1972.*

The cause was argued before BARNES, MCWILLIAMS,
SINGLEY, SMITH and DIGGES, JJ.

*H. Maxwell Hersch,* with whom was *Robert J. Crum*
on the brief, for appellant.

*Gordon C. Murray* and *James N. Phillips,* with whom

were *Francis B. Burch, Attorney General, Joel J. Rabin* and *Diana Motz, Assistant Attorneys General,* and *James I. Keenan, Jr.,* on the brief, for appellees.

SINGLEY, J., delivered the opinion of the Court.

The issue underlying this appeal is whether the absenteeism and tardiness of an employee can constitute "gross misconduct" within the meaning of our Unemployment Insurance Law, Maryland Code (1957, 1969 Repl. Vol.) Art. 95A (the Act).

Ethel L. Watkins, who had been employed by United States Fidelity and Guaranty Company (USF&G) as a charwoman for about six years, was discharged for absenteeism on 1 February 1971 when she was given two weeks' pay in lieu of notice. She filed a claim for unemployment insurance benefits and the examiner charged by § 7 (c) of the Act with making a determination upon the claim concluded that Mrs. Watkins was disqualified from receiving benefits because of her persistent absenteeism and tardiness, conduct which amounted to "gross misconduct" under § 6 (b) of the Act. Should this finding be sustained, Mrs. Watkins could not qualify for unemployment benefits until she becomes re-employed, earns at least ten times her weekly benefit amount of $36.00 and thereafter becomes unemployed through no fault of her own.

When administrative appeals taken by Mrs. Watkins to a referee and then to the Board of Appeals as provided by §§ 7 (e) and (f) of the Act proved fruitless, she appealed to the Superior Court of Baltimore City as permitted by § 7 (h) of the Act. From an order affirming the Board of Appeals, this appeal was taken.

The scope of judicial review under § 7 (h) of the Act is narrow:

> "In any judicial proceeding under this section, the findings of the Board of Appeals as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the juris-

diction of said court shall be confined to questions of law."

We have consistently followed the statutory provision, *Barley v. Maryland Department of Employment Security,* 242 Md. 102, 105, 218 A. 2d 24 (1966) ; *Employment Security Board v. LeCates,* 218 Md. 202, 207, 145 A. 2d 840 (1958) ; *Mitchell, Inc. v. Maryland Employment Security Board,* 209 Md. 237, 121 A. 2d 198 (1956), and have held that in the absence of an allegation or proof of fraud, the findings of fact of the Board's referee, supported by evidence and adopted and affirmed by the Board, are conclusive upon us, *Barley v. Maryland Department of Employment Security, supra,* 242 Md. at 106.

The Board of Appeals adopted the findings of fact made by the referee:

> "The claimant had gotten a warning letter in July, 1970 concerning her absences. She was absent twenty-two times in 1970, and nine times in 1971. The majority of these absences, however, were caused by illness. She presented one doctor's certificate to the employer in 1970, and one certificate in 1971. Some absences were for at least one week in duration while others were 'single day' absences. The claimant did not always call the employer when she was absent, but attempted to send word to the employer. Information submitted by the employer at the hearing shows that the claimant had been late thirty-six times during 1970. On her last absence which was January 29, 1971, she did not notify the employer. When the claimant reported for work on Monday, February 1, 1971, she was discharged because of the accumulation of absences."

There is no doubt that this was supported by the evidence. Mrs. Watkins' absenteeism was perennial, since the referee could have found that she had missed 10 days in

1965, 11 in 1966, three days in 1967 (when she was on leave of absence for five months), 12 days in 1968, 22 days in 1969, 30 (some of which were excused) in 1970, as well as nine days in 1971. In addition, she had been persistently late in reporting for work: 16 times in 1965; six, in 1966; 12, in 1967; 11, in 1968; 19, in 1969, and 36 times in 1970.

As a consequence, the court below had but one function: to determine whether Mrs. Watkins' conduct constituted "gross misconduct" as a matter of law. "Gross misconduct" is defined by § 6 (b) of the Act as being

> ". . . conduct of an employee which is (1) a deliberate and willful disregard of standards of behavior, which his employer has a right to expect, showing a gross indifference to the employer's interest, or (2) a series of repeated violations of employment rules proving that the employee has regularly and wantonly disregarded his obligations."

Prior to the enactment of Ch. 441 of the Laws of 1957, the section of the Act corresponding to § 6 (b), Code (1951) Art. 95A, § 5 (b), describing conduct leading to disqualification of an employee, used the concept of "deliberate and willful misconduct" in place of "gross misconduct."

In *Employment Security Board v. LeCates, supra,* 218 Md. at 207-210, we had occasion to consider the elements of "deliberate and willful misconduct," a phrase which was not defined in the Act, and concluded that it was

> "Such conduct [as] evinced an utter disregard of the employee's duties and obligations to his employer, and was calculated to disrupt the discipline and order requisite to the proper management and control of a . . . company . . . ." 218 Md. at 210.

*See also Fino v. Maryland Employment Security Board,* 218 Md. 504, 147 A. 2d 738 (1959) and *Ostrofsky v.*

*Maryland Employment Security Board,* 218 Md. 509, 147 A. 2d 741 (1959).

While *LeCates, Fino* and *Ostrofsky,* all *supra,* were cases which arose under the Act prior to the 1957 amendment, when the applicable standard was "deliberate and willful misconduct," once § 6 (b) of the Act was again amended by Ch. 204 of the Laws of 1969, to include, in the definition of "gross misconduct," "a deliberate and willful disregard of standards of behavior, which his employer has a right to expect, showing a gross indifference to the employer's interest . . .," [1] the teaching of *LeCates* is unquestionably as viable as it was in 1958.

As a consequence, we find persuasive the reasoning of the cases in other states where the test of willful misconduct is still applied and persistent or chronic absenteeism, where the absences are without notice or excuse, and continue in the face of warnings, is held to be a ground for disqualification, *e.g.,* the cases cited in Annot., 41 A.L.R.2d 1158 (1955) ; 81 C.J.S. *Social Security and Public Welfare* § 162, at 247 (1953), and 48 Am. Jur. *Social Security, Unemployment Insurance, Etc.* § 38, at 541 (1943) (each as supplemented).

Mrs. Watkins would have us introduce a new factor and hold that misconduct which does not substantially impair an employer's performance may amount to ordinary misconduct, but does not constitute gross misconduct. Her reliance on *Fino,* 218 Md. 504 and on *Ostrofsky,* 218 Md. 509, both *supra,* we regard as misplaced. Both of these cases turned on the question whether the misconduct was, in the language of the Act, "connected

---

1. Ch. 204 of the Laws of 1969 added the following to § 6 (b): "For the purposes of this Article, the term 'gross misconduct' shall include conduct of an employee which is (1) a deliberate and willful disregard of standards of behavior, which his employer has a right to expect, showing a gross indifference to the employer's interest, or (2) a series of repeated violations of employment rules proving that the employee has regularly and wantonly disregarded his obligations. Misconduct not falling within this definition shall not be considered gross misconduct." Mrs. Watkins says that (2) is not applicable since USF&G had no clear statement of "employment rules" which seems to be the case.

with his [the employee's] work." In *Fino,* a waitress was discharged for failure to answer questions of the Un-American Activities Committee. In *Ostrofsky,* employees of Bethlehem Steel Company were discharged for failing to answer similar questions. We held that the waitress, although guilty of misconduct which might adversely affect her employer's interests, was not guilty of misconduct in connection with her work. A contrary result was reached in *Ostrofsky,* because the misconduct of employees of a defense industry may well affect the prosecution of the employer's work.

Mrs. Watkins presents an entirely different case. Absenteeism or tardiness is directly connected with an employee's work. Whether an employer may be able to have the absent employee's duties performed by others is simply not relevant to the issue whether, in the language of the Act, there has been "a deliberate and willful disregard of standards of behavior . . . ." A disregard which is disruptive of discipline or destructive of morale may, in some circumstances, be as damaging as that which may be solely directed at interference with performance.

Mrs. Watkins next contends that gross misconduct was never proved and that the Board's findings were arbitrary, unreasonable and capricious. We have heretofore disposed of these contentions when we set out the narrow boundaries imposed by statute on the scope of judicial review.

Finally, Mrs. Watkins attempts to raise a constitutional issue: that she was denied due process when she was not encouraged to retain counsel in the administrative proceedings before the referee and the Board of Appeals. Assuming, without deciding, that this point is properly before us—it does not appear from the record that it was raised below but it plainly was not decided below, Maryland Rule 885—there are two answers to the contention. First, as a matter of Board routine, it is clear that from the time of her appeal to the Board of Appeals, Mrs. Watkins knew of her right to be represented by counsel. Secondly, and more importantly, she

was in fact ably represented by counsel in the Superior Court and before us.

We can find no reason to disturb the result reached below.

> *Order affirmed, costs to be paid by appellant.*