[J-40-2025]
IN THE SUPREME COURT OF PENNSYLVANIA
MIDDLE DISTRICT

TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, McCAFFERY, JJ.

| | | |
|---|---|---|
| NICOLE R. BREDBENNER | : | No. 53 MAP 2024 |
| | : | |
| | : | Appeal from the Order of the |
| v. | : | Superior Court at No. 19 MDA 2023, |
| | : | entered on August 15, 2023, |
| | : | Vacating and Remanding the Order |
| MICHAEL HALL, SR. | : | of the Lebanon County Court of |
| | : | Common Pleas, Domestic Relations, |
| | : | at Nos. 2015-5-0577 and PACSES |
| APPEAL OF: LEBANON COUNTY | : | 257115382, entered on December |
| DOMESTIC RELATIONS OFFICE | : | 2, 2022 |
| | : | |
| | : | ARGUED: May 14, 2025 |

**OPINION ANNOUNCING THE JUDGMENT OF THE COURT**

**JUSTICE WECHT**                                  **DECIDED: March 26, 2026**

This appeal concerns a child support contemnor's claim that he is unable to pay the purge condition set by the trial court.

Parents bear a statutory duty to support their unemancipated children.[1] The same statutory scheme authorizes establishment of a support obligation via court order, and specifies consequences that attend breach of that obligation.[2]

When a person who owes a duty of support ("the obligor") fails to comply with a support order, the person to whom support is owed ("the obligee") or the county domestic

---

[1]    23 Pa.C.S. § 4321.

[2]    *See id.* §§ 4341, 4345.

relations office/section ("DRO")[3] can seek enforcement by filing a petition for civil contempt.[4] That petition informs the obligor that he is subject to imprisonment or fine if he is found in violation of the support order. It also notifies him that he is subject to arrest if he fails to appear at the hearing on the petition. The petition explains that the obligor's ability to pay "is a critical issue," and that relevant documentation should be brought to the hearing.[5]

In any contempt proceeding, the species of contempt being pursued must be clear. "[E]ven where the same facts might give rise to criminal as well as civil contempt, each has its own distinct procedures and confers distinct procedural rights; the two may not be casually commingled."[6] Civil contempt aims to coerce compliance with a court order. Criminal contempt punishes violation of an order and vindicates the court's authority.[7] In

---

[3]     The county DRO is authorized by Pa.R.Civ.P. 1910.25(a) to file a petition for contempt. The DRO's counsel often acts as the "Title IV-D" attorney who is required to "aid in the enforcement of the duty of child support and child and spousal support and shall cooperate with the domestic relations section in the presentation of complaints or in any proceeding designed to obtain compliance with any order of the court." 23 Pa.C.S. § 4306(a). "Title IV-D" refers to Part D ("Child Support and Establishment of Paternity") of Subchapter IV of the Social Security section of the federal Public Health and Welfare Code. *See* 42 U.S.C. §§ 651-669b. Here, the Lebanon County DRO avers that it "is the petitioner in the vast majority of contempt petitions." DRO's Brief at 44.

[4]     Pa.R.Civ.P. 1910.25(a).

[5]     Pa.R.Civ.P. 1910.25(b), (f).

[6]     *Barrett v. Barrett*, 368 A.2d 616, 619 (Pa. 1977) (citing *Phila. Marine Trade Ass'n v. Int'l Longshoremen's Ass'n*, 140 A.2d 814, 820-21 (Pa. 1958)).

[7]     *Id.* at 619-20; *see also Cnty. of Fulton v. Sec'y of Commonwealth*, 292 A.3d 974, 1004 (Pa. 2023) (stating that "the distinction depends upon whether the sanctions' dominant purpose is to punish for the violation of a court order [criminal contempt] or to coerce into compliance with the order [civil contempt].") (quoting *Barrett*, 368 A.2d at 619) (brackets in original; internal quotation marks omitted).

a criminal contempt proceeding, the obligor must be provided with "the essential procedural safeguards of the criminal law."[8]

In support matters, the court has recourse to both civil and criminal contempt.[9] Most often, obligees and county DROs pursue civil contempt, because their priority is to coerce the obligor to comply with his support obligation.

Contempt findings ensue when obligors fail to comply with support orders. The party filing the petition for contempt bears the burden to show (by a preponderance of the evidence) that the obligor violated the court order.[10] The failure to comply must be willful.[11] "If the alleged contemnor is unable to perform and has in *good faith* attempted to comply with the court order, contempt is not proven."[12] Once the obligee or DRO proves noncompliance by a preponderance of the evidence, the burden shifts to the obligor, who must demonstrate his lack of willfulness.[13]

---

[8]     *Barrett*, 368 A.2d at 619.

[9]     *See* Pa.R.Civ.P. 1910.25-5, 1910.25-7.

[10]    *Sinaiko v. Sinaiko*, 664 A.2d 1005, 1009 (Pa. Super. 1995).

[11]    *See Cnty. of Fulton*, 292 A.3d at 1004 (citing *Waggle v. Woodland Hills Ass'n*, 213 A.3d 397, 403 (Pa. Cmwlth. 2019)) (stating that a finding of contempt requires proof that the party had notice of the order alleged to have been violated, that the violation was volitional, and that the party acted with wrongful intent).

[12]    *Sinaiko*, 664 A.2d at 1009 (emphasis in original) (quoting *Wetzel v. Suchanek*, 541 A.2d 761, 762 (Pa. Super. 1988)).

[13]    *Id.*

Once a court[14] finds a party in civil contempt, it may impose a sentence of up to six months of imprisonment, a fine of up to $1,000, and/or up to one year of probation.[15] The court must "specify the condition the fulfillment of which will result in the release of the obligor."[16]

As this Court stated years ago:

> Before a defendant may be committed for civil contempt, it is essential that it be clear what is required of him in order to purge himself of the contempt, and the commitment order should state the condition which when complied with will release him. In the absence thereof, a commitment for civil contempt is improper. An order committing a defendant to prison for a civil contempt until he does something which is apparently beyond his power to do is clearly an order which this Court cannot approve.[17]

The condition that allows the obligor to be released from the sentence is colloquially known as the "purge condition," as its performance purges the obligor's contempt. The purge condition must be within the obligor's power to perform. When that purge condition is a payment, the obligor must have the present ability to pay it, lest the coercive intent of the civil contempt transform into a punishment.[18] The question that we must resolve today concerns the inquiry into an obligor's present ability to pay, and how that ability to pay is proven.[19]

---

[14] The Rules afford various options for the conduct of the contempt proceeding, including use of hearing or conference officers. *See* Pa.R.Civ.P. 1910.25-1 to 1910.25-4. However, if "the hearing officer or conference officer determines that the failure to comply with the support order is willful and there is present ability to comply, the petition for contempt shall be heard by the court for consideration of incarceration and other appropriate sanctions." Pa.R.Civ.P. 1910.25-1(b).

[15] 23 Pa.C.S. § 4345(a).

[16] *Id.* § 4345(b).

[17] *Knaus v. Knaus*, 127 A.2d 669, 674 (Pa. 1956).

[18] *Barrett*, 368 A.2d at 620.

[19] The issue granted by the Court is:

(continued…)

Nicole Bredbenner and Michael Hall have three children, born in 2004, 2009, and 2013. Hall has an additional child, born in 2000. On July 21, 2015, Bredbenner filed a petition seeking child support from Hall for the three children they share. On September 1, 2015, based upon a hearing officer's recommendation, the court ordered that Hall pay $297.75 (plus $29.78 on arrears) per month. This amount reflected a downward deviation from the support guideline amount, because Hall also had an obligation to support his older child.

On October 12, 2015, the DRO filed a contempt petition, alleging that Hall had failed to pay support as ordered. By order dated December 1, 2015, the trial court denied the petition. The court cited Hall's consistent record of paying support for his older child, his claim of physical injury, and his pending support modification petitions. The court ordered Hall to obtain medical documentation for his injury, to seek employment, and to report monthly to the DRO.

Following a January 14, 2016 hearing, the trial court suspended Hall's support obligation, as he had provided medical documentation demonstrating that he was unable to work. The court scheduled a review hearing, and ordered Hall to provide updated medical information and to disclose the status of his then-pending application for disability.

At the April 28, 2016 review hearing, Hall submitted the relevant medical documentation. His support obligation remained in suspended status. However, following an August 4, 2016 review, the trial court reinstated Hall's obligation after he

---

Where a contemnor, after a finding of contempt, posits that he is unable to pay a purge, does the contemnor waive the issue if he fails to proffer affirmative proof of his financial circumstances?

*Bredbenner v. Hall*, 322 A.3d 1287, 1288 (Pa. 2024) (*per curiam*).

failed to offer proof of a continuing disability. The court ordered Hall to pay $98.62, plus $9.86 in arrears, per month.

In the years that followed, the DRO filed a series of contempt petitions, alleging each time that Hall had failed to pay the ordered support.[20] On these occasions, the court declined to find Hall in contempt, either because he was about to start verified employment or because he made a payment on or before the hearing date.

On December 22, 2020, Bredbenner filed a petition to modify support. The trial court increased Hall's monthly obligation to $340, plus $34 on arrears, each month. The modification resulted in part from the fact that Hall's oldest child aged out of her dependent status.

On April 20, 2021, the DRO filed another contempt petition. Hall again made a payment on the day of the hearing, thereby avoiding a contempt finding. This pattern repeated after the DRO filed another petition on October 14, 2021.

On December 10, 2021, Hall filed a petition to modify his support obligation, claiming that an occupational injury precluded gainful employment. On March 1, 2022, the hearing on that petition was postponed in order to permit Hall to provide documentation showing that he was receiving workers' compensation benefits. On April 25, 2022, the court dismissed Hall's petition. The preexisting support order remained in effect. The court had learned that Hall had been released from workers' compensation to return to full duty, and that he had quit his job shortly thereafter.

On February 28, 2022, while the modification petition was pending, the DRO filed a contempt petition. Hall again made a payment on the hearing date, and the court declined to find him in contempt. Another petition followed on July 1, 2022, but the court

---

[20] The DRO filed these petitions on October 17, 2016, August 17, 2017, January 10, 2018, April 25, 2018, August 15, 2018, January 11, 2019, and July 27, 2019.

again declined to find Hall in contempt because he was actively looking for work. The DRO petitioned for a contempt finding again on September 6, 2022, but the court again demurred, as Hall was scheduled to start a new job the following week. In its order, however, the court warned that Hall had "used up his indulgence with the [c]ourt."[21]

On October 18, 2022, the DRO filed yet another contempt petition. On November 17, 2022, the court ordered an evidentiary hearing. The court noted that, although Hall had avoided a contempt finding at the previous hearing because he was starting work, he had only remained at that job for a few hours before quitting. In light of Hall's claims that he was unable to perform the work due to physical limitations, the court reminded Hall to bring medical documentation to support his claims. The court appointed a public defender to represent Hall.

At the conclusion of the November 29, 2022 hearing, as documented in the court's December 2, 2022 order, the court found Hall to be in contempt. The court recited the history of the case and reviewed the testimony of a representative of Hall's recent, short-lived employer. That representative testified that Hall was hired as an inspector, that Hall arrived for work on his first day, that Hall asked to take a smoking break approximately two hours later, and that, when Hall was told that smoking was not permitted on company property, he left and did not return. The court reviewed Hall's medical documentation and determined that it was the same material that Hall submitted in 2016, when his support obligation was suspended. Given the lack of current proof of a disability, Hall's failure to make a payment in the prior year, and his apparent unwillingness to work, the court concluded that Hall had willfully failed to pay his support obligation. The court ordered Hall to be incarcerated for 100 days, and it set a purge condition of $2,000.

---

[21] Trial Ct. Order, 9/29/2022, at 2.

Hall sought reconsideration, alleging that he did not have the present ability to pay the $2,000 purge condition. The court denied the motion. In its opinion, the trial court focused upon the practical effect of Hall's argument. The court suggested that, if an obligor could defeat a contempt finding simply by stating that he did not have the ability to comply, "child support awards would become meaningless."[22] The court suggested that, if obligees were denied a meaningful ability to enforce support orders, obligors likely would spend their money on other priorities, and then claim poverty to dodge a contempt finding. The court highlighted the fact that a putative inability to pay often is self-serving and that, in the court's experience, obligors tend to make a payment once imprisonment is imminent, notwithstanding their alleged lack of funds. The trial court bemoaned the difficulty of determining the veracity of self-serving statements when corroborating evidence generally is lacking, especially when weighed against the needs of the children who have not received the support that a parent owes them. The trial court recognized that an obligor must have the present ability to pay the purge condition. Because the court did not deem Hall to be credible, it found insufficient evidence to demonstrate convincingly his inability to pay. The court based that determination upon Hall's history of making payments in order to avoid imprisonment, Hall's access to funds to support himself (evidenced by the fact that he was not homeless), his failure to provide evidence of a disability that precluded him from work, and the credible testimony from the employer's representative that Hall had walked off the job on his first day. The trial court believed, based on its experience with Hall, that Hall had the financial resources to pay the $2,000 purge condition.

On appeal, a panel of the Superior Court vacated the trial court's order and remanded for further proceedings. Before the panel, Hall argued that the trial court erred

---

[22] Trial Ct. Op., 1/26/2023, at 8.

by setting a purge condition without first determining whether he had the present ability to meet the purge condition. Citing our decision in *Barrett*, the panel noted that, before ordering incarceration, a trial court must be convinced beyond a reasonable doubt that the obligor has the present ability to comply with the purge condition. Otherwise, the sanction impermissibly converts from a coercive remedy into a punitive one.

The panel recounted Hall's testimony that he had not been employed since October 1, 2022, and that he was being supported by his brother. Thus, Hall had no monthly expenses. While Hall's counsel had objected to the $2,000 purge condition because it was assertedly beyond Hall's ability to pay, the trial court had disagreed because Hall had the ability to work and would have had the money had he chosen to work. Further, the trial court had stated: "I will go so far as to tell you that I believe he is going to pay that purge. I don't believe he is going to stay in jail for that entire period of time. And if I'm wrong, I'll buy you a soda."[23]

The panel discerned insufficient evidence for the finding that Hall had the ability to satisfy the purge condition. No record evidence showed that Hall had available funds or any assets that he could liquidate to pay the purge condition. Accordingly, the panel held that the trial court had abused its discretion, and the panel vacated the contempt order. The panel remanded the case to permit the trial court to take additional evidence and to determine an appropriate means of coercion.

The DRO filed a petition for allowance of appeal, which this Court granted.[24]

---

[23]     *Bredbenner v. Hall*, 19 MDA 2023, 2023 WL 5237495 at *3 (Pa. Super. Aug. 15, 2023) (quoting Notes of Testimony, 11/29/2022, at 23-24). Hall served the entirety of the 100-day sentence. Hall's Brief at 5.

[24]     Technically, this case became moot when Hall completed his contempt sentence. "Although courts generally will not decide a moot case because the law requires the existence of an actual controversy, this Court has recognized two 'well-organized exceptions to the mootness doctrine.' We have reviewed moot matters, in our discretion, when the issue presented is one of great public importance or is one that is capable of (continued…)

Before this Court, the DRO recognizes that *Barrett* is "the seminal authority in this area."[25] The DRO stresses that, although *Barrett* instructs that a court must be convinced beyond a reasonable doubt from the totality of the evidence that a contemnor has the present ability to pay the purge condition, that precedent also holds that "present inability to comply is an affirmative defense which must be prove[n] by the alleged contemnor."[26] The DRO avers that, while *Barrett* does not specify which party bears the burden of production, this Court's use of the term "affirmative defense" suggests that the burden lies with the contemnor. The DRO notes that, in accordance with court rules, contempt petitions notify obligors that they are required to bring proofs of income and complete income and expense statements to hearings, and that this suggests that obligors bear the initial evidentiary burden.[27]

The DRO urges that ability to pay the purge condition should be treated as a true affirmative defense, such that the obligor bears the burden to provide initial evidence of an inability to pay the purge condition. The DRO suggests that any other rule will impede judicial enforcement of support orders. The DRO argues that obligors hold an incentive to claim indigence in order to avoid a high purge condition or imprisonment. It is often impossible to obtain corroborating evidence. The DRO maintains that the history of a case (including prior payments and the determination of an obligor's earning capacity or

---

repetition yet evading review." *Ass'n of Pa. State Coll. & Univ. Facs. v. Pa. Lab. Rels. Bd.*, 8 A.3d 300, 305 (Pa. 2010) (cleaned up). Hall remains subject to support orders, and may face future contempt proceedings. Because the term of imprisonment is limited to six months by statute, it is unlikely that an appeal could reach this Court before the sentence is completed. Therefore, the "capable of repetition yet evading review" exception to mootness is satisfied.

[25]    DRO's Brief at 21.

[26]    *Id.* at 22 (quoting *Barrett*, 368 A.2d at 621) (alteration in original, emphasis removed).

[27]    *Id.* at 25-26 (citing Pa.R.Civ.P. 1910.25(b)).

prior income) should be considered in evaluating the current ability to pay: "where there is no showing by the defendant of inability to pay, there has been no change of circumstances[,] [and] the court should not need to infer the same, regardless of the height of the burden of proof."[28] The DRO contends that the obligor must provide some evidence of his inability to pay, because the obligor is the one with access to the relevant evidence.[29]

Hall responds that the trial court here merged the two-part inquiry in civil contempt — "(1) [a] finding by a preponderance of the evidence that the defendant willfully failed to comply with the court order, . . . and (2) [a] finding '*beyond a reasonable doubt*, from the totality of the evidence' that the defendant has the 'present ability to comply' with the purge condition"[30] — into one. Hall does not challenge the trial court's finding that he was in contempt.[31] He maintains that, in imposing a purge condition that no evidence proved he could satisfy, the trial court converted a civil contempt purge condition into a punishment sounding in criminal contempt.

Hall contends that *Barrett* places the burden on the petitioning party to demonstrate, beyond a reasonable doubt, that the obligor has the present ability to satisfy the purge condition. He argues that disbelief of an obligor's testimony claiming inability to pay is not evidence of ability to pay. The *Barrett* Court agreed that unwillingness to accept an obligor's testimony was not record support of an ability to pay a purge condition.

---

[28]     *Id.* at 41.

[29]     *Id.* at 48-49 ("[I]f there is going to be a rule that a Defendant can show up at contempt and expect the DRO to be required to prove the Defendant's ability to pay, it essentially takes contempt off the table for us. We are simply rarely or never going to be able to prove up [*sic*] an adequate purge amount *without the [D]efendant's cooperation*.") (emphasis in original).

[30]     Hall's Brief at 16 (quoting *Barrett*, 368 A.2d at 621)) (emphasis in original).

[31]     *Id.* at 10.

As to *Barrett*'s reference to inability to pay as an affirmative defense, Hall contends that the statement related to the Court's discussion of the initial finding of contempt and the obligor's related burden to show that the failure to comply was not willful. He claims that, when it referenced an affirmative defense, the *Barrett* Court was not speaking to an inability to pay the purge condition. Hall maintains that an earning capacity or ability to earn are not relevant to the legality of a purge condition, because both speculate as to earning capacity; they do not establish a present ability to pay the purge condition. As to the practical difficulties of obtaining evidence, Hall points out that trial courts have multiple options beyond civil contempt, including indirect criminal contempt,[32] probation, or requirements to apply for jobs or to meet regularly with the DRO for job search assistance.

As both parties agree that *Barrett* plays an important role in this area of law, we review that precedent.[33] Merle Barrett was the obligor on two support orders: one for the support of his ex-wife and their three children, and one for the support of a child born out of wedlock. Although Barrett was working, "he seldom if ever voluntarily complied with either order."[34] In March 1974, he quit his full-time job "because of what he termed 'harassment' by the mothers of his children and the Beaver County Domestic Relations office . . . in attempting to collect the support that was due."[35] Shortly thereafter, Barrett

---

[32] The DRO responds that it prefers that courts not impose criminal contempt, because it does not want obligors in jail, where they cannot pay their support obligations; instead, the DRO prefers the threat of jail as a means to coerce payment via the purge conditions of civil contempt. *See* DRO's Reply Brief at 12-13.

[33] The "standard of review when considering an appeal from an order holding a party in contempt of court is narrow: We will reverse only upon a showing of an abuse of discretion. The court abuses its discretion if it misapplies the law or exercises its discretion in a manner lacking reason." *Godfrey v. Godfrey*, 894 A.2d 776, 780 (Pa. Super. 2006).

[34] *Barrett*, 368 A.2d at 618.

[35] *Id.*

and a girlfriend moved to Ohio. He neither informed the DRO of his new address nor paid support while in Ohio.

One year later, Barrett returned to Pennsylvania. He was taken into custody. On August 20, 1975, the trial court found Barrett to be in contempt, and ordered him to be imprisoned until he paid $500 toward his arrears and posted compliance bonds of $500. Barrett did not pay. He remained in jail. He appealed to the Superior Court, which affirmed (with the exception of limiting the term of imprisonment to six months).

This Court reviewed the following issue: "whether an indigent person who in the past willfully disobeyed support orders may now be imprisoned for civil contempt when he cannot purge himself of contempt due to his indigency."[36] Initially, the Court noted that the proceedings were for civil contempt, because the lower court sought to coerce compliance, not to punish Barrett. The Court found ample evidence that Barrett was in contempt; he had willfully failed to comply with the support orders. However, this Court held that the Superior Court had erred by concluding that the willful failure to comply justified the sentence of imprisonment; the intermediate court had "confused the coercive and prospective function of imprisonment in civil contempt with criminal punishment for past acts."[37] "[A] court may not convert a coercive sentence into a punitive one by imposing conditions that the contemnor cannot perform and thereby purge himself of the contempt."[38] The *Barrett* Court ruled that determination of whether Barrett's sentence was permissible must turn upon whether he had the present ability to pay the purge condition.

---

[36]     *Id.* at 619.

[37]     *Id.* at 620.

[38]     *Id.*

This Court examined the trial court's determination that Barrett had the ability to pay the purge condition based upon the trial court's disbelief of Barrett's claims of indigency. Like the DRO in this case, the party pursuing support argued to this Court that Barrett "ha[d] failed to meet his burden of proof as to his financial inability to comply."[39] Noting that there were no cases directly on point, this Court stated:

> [T]he general rule is that in civil contempt proceedings the burden is on the complaining party to prove noncompliance by a preponderance of the evidence, but that present inability to comply is an affirmative defense which must be proved by the alleged contemnor. We now hold, however, that where, as here, the court in civil proceedings finds there has been willful noncompliance with its earlier support orders constituting contempt but the contemnor presents evidence of his present inability to comply and make up the arrears, the court, in imposing coercive imprisonment for civil contempt, should set conditions for purging the contempt and effecting release from imprisonment with which it is convinced [b]eyond a reasonable doubt, from the totality of the evidence before it, the contemnor has the present ability to comply.[40]

This Court reasoned that the "beyond a reasonable doubt" standard was warranted because of the potential for the sentence to become punitive if the contemnor did not have the ability to pay, thus triggering "the safeguards of criminal procedure."[41] Because the purpose of the support laws was to obtain support for obligees, and because a contemnor who is unable to pay the purge would be unlikely to gain the ability to do so in prison, any coercive justification for imprisonment was undermined absent proof of a present ability to pay.

This Court recounted that Barrett provided uncontradicted (albeit uncorroborated) testimony that his girlfriend supported him, that he earned about $150 per month (which paid for personal expenses and contributed to food and rent), and that his assets

---

[39] *Id.* at 621.

[40] *Id.*

[41] *Id.*

consisted of a ten-year-old car and $70 in a bank account. The trial court did not find Barrett to be credible, and it cited the girlfriend's ability to post Barrett's $1,000 appearance bond. This Court noted, however, that Barrett's girlfriend had no duty to support him, so her ability to post bond was not relevant. The *Barrett* Court held that there was insufficient record evidence to demonstrate that Barrett had the present ability to comply with the purge condition. Thus, this Court held that Barrett's imprisonment was improper, and it reversed the lower court.

As in *Barrett*, there is ample evidence of Hall's willful non-compliance with the support order. Hall does not contend otherwise. The sole issue before this Court relates to his ability to pay the purge condition.

The goal of civil contempt is to coerce compliance. The method to reach that goal is the purge condition. In support cases, a sentence of incarceration can be necessary to coerce the obligor to pay the purge condition. An obligor's payment of the purge condition serves all parties. The obligee receives some of the support owed. The obligor avoids imprisonment and remains able to maintain or seek employment, which would be difficult, if not impossible, while in jail. For this process to have the intended coercive effect, the purge condition must be within the obligor's ability to pay. If not, the condition cannot have the desired coercive effect and, instead, becomes punishment. Punishment transforms the remedy from civil to criminal contempt, a transformation that requires additional procedural safeguards. Whatever its merits, punishment in this context does not aid the obligee in receiving support, and it prevents the obligor from continuing or seeking employment for the period of confinement.

In setting an appropriate purge condition, the ability to pay is the crucial inquiry. Determining ability to pay is a difficult task. Based upon the *Barrett* Court's description of

the present inability to pay as an affirmative defense, the DRO maintains that the obligor has the burden to prove his inability to pay. We disagree.

*Barrett* does not require inability to pay to be viewed as an affirmative defense. The passage in which the phrase appears (as quoted above) begins by identifying the "general rule . . . that present inability to comply is an affirmative defense."[42] The *Barrett* Court continued that, "[w]e now hold, however, that where . . . the contemnor present[s] evidence of his present inability to comply," the court must set a purge condition that it is convinced beyond a reasonable doubt that the contemnor can pay.[43] The use of the word "however," and the clarification that we "now hold," indicates a departure from the general rule that the present ability to comply is an affirmative defense.

The Court spoke of the affirmative defense of the present inability to comply as one that must be proven by the "alleged contemnor."[44] Later, when the Court held that a court must set a purge condition that can be complied with based upon the totality of the evidence and beyond a reasonable doubt, the Court used the term "contemnor."[45] The change in terminology is consistent with reading this passage as applying the affirmative defense language to the initial stage of a civil contempt proceeding — to the finding by the court that the obligor willfully failed to comply with the court order — rather than the second part, in which the purge condition is set. That is also consistent with the burden-shifting of the initial contempt finding: the petitioner has the burden to show, by a preponderance of the evidence, that the obligor violated a court order; then, the obligor

---

[42]     *Barrett*, 368 A.2d at 621.

[43]     *Id.*

[44]     *Id.*

[45]     *Id.*

has the burden to demonstrate an inability to comply such that the failure was not willful.[46] Once there is a determination that the failure to comply was willful, and that the obligor is in contempt, the "alleged contemnor" becomes the "contemnor."

Viewing the inability to pay as an affirmative defense is inconsistent with the outcome in *Barrett*. There, the trial court did not find Barrett's testimony to be credible. If the *Barrett* Court intended an inability to pay to be an affirmative defense, the trial court's credibility finding would have necessitated a conclusion that Barrett had not met his burden, and would have required affirmance of the lower courts' decisions. But the *Barrett* Court held the opposite, ruling that the court's disbelief of Barrett's testimony was insufficient and that the record did not provide other evidence of an ability to pay. *Barrett* does not support the proposition that the obligor has a burden to prove an inability to pay as an affirmative defense to the purge condition.

The requirement that the ability to pay the purge condition must be determined beyond a reasonable doubt is inconsistent with placing the burden on the obligor to prove his inability to pay. Making the obligor prove an inability to pay presumes an ability to pay. An ability to pay demonstrated beyond a reasonable doubt cannot be based upon a presumption. It must be based upon record evidence.

That evidence cannot be based solely upon disbelief of the obligor's testimony. Such disbelief, without more, reflects an absence of credible evidence. In any event, it is not evidence beyond a reasonable doubt. A history of making payments (either as purge payments or payments to avoid a contempt finding) does not prove a present ability to pay. The means by which an obligor is supporting himself is relevant. If that support is being provided by a third party (such as the girlfriend in *Barrett* or Hall's brother here) who owes no duty of support to the party or the children involved, the court cannot assume

---

[46]     *Sinaiko*, 664 A.2d at 1009.

that, because the third party is supporting the obligor, the obligor can obtain funds from the third party to satisfy the purge condition. The obligor's ability (but refusal) to work is relevant to the willfulness of the contempt, but does not speak to the obligor's present ability to pay a purge condition. To support a monetary purge condition, the trial court must be able to cite record evidence of an obligor's present ability to pay the amount.

We do not suggest that purge conditions can only be monetary. Trial courts may set other types of conditions, especially when the record does not support the obligor's present ability to pay. For example, the court could require an obligor to meet with an employment specialist within the DRO, or to register with CareerLink,[47] or to make a certain number of applications for employment. The statute also authorizes a probationary sentence, which the court may use to require the obligor to report and meet regularly with the DRO during a search for employment. We do not tie the trial court's hands in contempt proceedings nor do we prevent the court from exploring creative solutions (within the bounds of the statute) to coerce compliance with support orders.

We hold that, in civil support contempt proceedings, a trial court must attach an attainable condition so that the obligor may purge himself of contempt. The record must support the obligor's ability to meet that condition. The burden is on the petitioning party to develop that record.[48] The record is inadequate if it merely contains the discredited

---

[47]    CareerLink is a service provided by the Pennsylvania Department of Human Services that provides information on employment and training opportunities. *See* PA CAREERLINK, www.pacareerlink.pa.gov/jponline (last visited July 23, 2025).

[48]    In her concurrence, the Chief Justice argues that the obligor has an initial burden to demonstrate an inability to pay, which can then by rebutted by the petitioning party. *See* Conc. Op. at 2-3 (Todd, CJ., concurring). For support, the Chief Justice cites to prior precedent in which the obligor testified to his finances and to  forms that require an obligor to provide certain documentation. Regardless, placing an initial burden on the obligor is not consistent with *Barrett*'s requirement that the ability to pay must be demonstrated beyond a reasonable doubt and with record evidence. An example illustrates the point. Suppose that an obligor refuses to testify or provide evidence. That obligor would not (continued…)

have met the initial burden of production that the Chief Justice would assign to him. *See id*. at 2. Nonetheless, absent other proof, the trial court would have no record evidence upon which it could base a finding of a present ability to pay beyond a reasonable doubt. It could not identify a monetary purge condition, and hence could not incarcerate the obligor to coerce payment.

The Chief Justice suggests that the procedural rules which include the form order summoning the obligor to bring certain proof to the contempt hearing demonstrate that there is an initial burden on the obligor to demonstrate his inability to pay. *See id.* at 8-9. Forms aside, it remains true that, should the obligor choose not to produce that evidence, there would still be no record evidence upon which a monetary purge condition could be set. The requirement that there be an evidentiary record supporting the imposition of a monetary purge condition is not consistent with a burden being placed upon the obligor. Otherwise, a purge condition could be imposed solely because the obligor did not meet such an initial burden.

The Chief Justice is correct that the trial court may (provided proper notice, procedural safeguards, and the requisite level of proof) find the obligor in contempt for failing to comply with an order to bring required documentation and, if the obligor has the present ability to comply, set as the purge condition the provision of that documentation. *See id.* at 9-10. Fair enough. Purge conditions need not be monetary. But this misses the point. Ability to pay on one hand and contempt for failure to bring documents on the other are not the same thing.

Justice Brobson suggests that neither party should bear the burden, but that, instead, "that burden rests solely on the court that is utilizing its discretionary power" to set a purge condition. Conc. Op. at 3 (Brobson, J., concurring). Justice Brobson concludes that, if the record is inadequate to support a purge condition that the contemnor has the present ability to pay, the court must "(a) take incarceration off the table, or (b) compel the parties to present additional evidence." *Id.* at 4.

However, Justice Brobson acknowledges that the court sets the purge condition based upon "the totality of the evidence before it." *Id.* at 2 (quoting *Barrett*, 368 A.2d at 621). That evidence must come from somewhere. In our system of justice, the court relies upon the parties to provide evidence, rather than investigating on its own. Of course, a trial court can enforce its orders for parties to produce documents, and can ask additional questions of witnesses, but it is still limited to weighing the evidence that the parties provide. The burden is not on the court to conduct an investigation or exert other efforts in order to obtain that evidence.

It is true that, if the record does not support the contemnor's ability to pay a purge condition, then the court cannot incarcerate the contemnor. But that does not place the burden of proof on the trial court. It simply states the law that the trial court must follow.

testimony of the obligor. This may make enforcement of support orders more difficult. Often, the only testimony is from the obligor. That testimony may be self-serving. Our decision may require the DRO to ask more questions on cross-examination regarding the obligor's assets or income. It may require that the obligee be called as a witness, because a co-parent may have relevant information about income or assets. It may require that the trial court ask the witnesses questions so that the record does not remain undeveloped. Regardless of the difficulties, the record must support any purge condition, because "[d]ifficulty of proof has never been allowed as an excuse for dispensing with it."[49]

Because the record here did not support Hall's ability to pay the purge condition, we affirm the Superior Court's decision.

Justices Donohue and McCaffery join the opinion announcing the judgment of the Court.

Chief Justice Todd files a concurring opinion in which Justices Dougherty and Mundy join.

Justice Brobson files a concurring opinion.

---

[49] *Ault v. Unemployment Comp. Bd. of Rev.*, 157 A.2d 375, 378 (Pa. 1960).